Golden Bar, Inc. Liquor License Case No. 1.

Argued September 20, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Stanley M. Greenberg,* with him *Ochman and Greenberg,* for appellant.

*Russell C. Wismer,* Special Assistant Attorney General, with him *George G. Lindsay* and *Horace A. Segelbaum,* Assistant Attorneys General, and *Anne X. Alpern,* Attorney General, for Pennsylvania Liquor Control Board, appellee.

OPINION BY ERVIN, J., November 16, 1960:

This is an appeal from the order of the court below suspending the restaurant liquor license of appellant for a period of 20 days for violation of the board's regulation §110.02, which is as follows: ". . . D. No licensee shall require, request or permit any person engaged directly or indirectly as an entertainer in the licensed establishment or in any room or place connected therewith, to contact or associate with the patrons in such establishment, room or place for any purpose whatsoever. (A copy hereof shall be con-

stantly and conspicuously displayed on the wall of the dressing room or rooms used by such entertainers.)"

An appeal from the decision of the Quarter Sessions Court is in the nature of a certiorari and this Court is only required to review the record to determine whether there is evidence to support the order from which the appeal is taken and to determine whether the court below committed an error of law or abused its discretion: *Heights Fire Co. Liquor License Case*, 181 Pa. Superior Ct. 56, 121 A. 2d 902; *Green Gate Inn Liquor License Case*, 185 Pa. Superior Ct. 214, 138 A. 2d 292.

The validity of regulation 110.02 was determined in *Tahiti Bar, Inc. Liquor License Case, Lehigh Casino, Inc. Liquor License Case*, 395 Pa. 355, 150 A. 2d 112.

The regulation is perfectly clear. It prohibits entertainers from contacting or associating with patrons for any purpose whatsoever.

It is clear from the record that the entertainers were permitted to sit at the bar and drink, thereby inviting fraternization, the very evil the board seeks to prevent.

The appellant complains of the fact that the conversation was not shown between the entertainers and the patrons and that there was no testimony that the entertainers were soliciting drinks or receiving drinks purchased for them by the patrons, or enticing patrons to drink. It was not necessary to show the conversation. The mere fact that the entertainer was permitted to sit at the bar with other patrons, in between acts, would, in our judgment, constitute a violation of the regulation. The licensee admitted that at times the patrons would attempt to initiate a conversation with the entertainers and when he saw it he would tell the patrons not to bother the girls. Certainly the

bartender could not adequately police such a situation and perform all of his other manifold duties. Whether the entertainers paid for their own drinks or whether they were purchased for them by other patrons is immaterial. Whether patrons were boy friends or even husbands is immaterial.

We repeat what was so well said by Mr. Justice BENJAMIN R. JONES in *Tahiti Bar, Inc. Liquor License Case,* supra, at p. 372: "Lastly, appellants urge that the regulation is too broad in its scope in that it prevents entertainers 'from discussing innocent topics over a drink' with their husbands, wives, agents or friends, when this is not the evil sought to be remedied. . . . A regulation which contained the excepted conduct on the part of the entertainers advocated by appellants would by its very terms doom the regulation and render impossible its execution and enforcement. While the difficulty of enforcement alone is insufficient to breathe validity into an otherwise invalid regulation, yet such difficulty is extremely significant when the instant regulation is viewed in its proper setting. This regulation is directed against a well-defined group, namely entertainers in licensed establishments; its purpose is the abolition of certain well-recognized and prevalent evils historically associated with the sale and consumption of alcoholic beverages on licensed premises. Bearing in mind the evils sought to be controlled, the obvious difficulty of enforcement of a regulation containing such an exception and the limited class against which the regulation is directed, we do not believe it is unreasonable to deprive that class of the right 'to discuss innocent topics over a drink' with wives, husbands, agents or friends while employed as entertainers in licensed establishments."

It was also argued that the regulation and the manner of its enforcement did not "bear a reasonable

relationship to acts and conduct which give rise to the social evils to be prevented." We think that it did. Permitting entertainers to sit at the bar and drink with men patrons is inviting trouble and the prevention of such conduct is directly related to the social evils sought to be prevented. It does not require a very fertile imagination to foresee the consequences of the admixture of alcohol, so-called exotic dances by females in scanty attire, and close fraternization with the opposite sex, under the dim lights of a public bar.

A state may adopt such measures as are reasonably appropriate or needful to prevent the social evils usually and traditionally associated with the use of alcoholic beverages: *Tahiti Bar, Inc. Liquor License Case,* supra, at p. 360.

To prohibit entertainers from contacting or associating with patrons anywhere upon the licensed premises for any purpose whatsoever is, in our judgment, a reasonable regulation, appropriate and needful to prevent certain well-known social evils.

Order affirmed.