Forrest M. Swaydis, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania State Police, Respondent.

510

Submitted on briefs to President Judge CRUMLISH, JR. and Judges ROGERS and MACPHAIL, sitting as a panel of three.

*Harris T. Bock,* with him, *Kathleen A. Fiftal, Bock and Finkelman,* for petitioner.

*Gregory R. Neuhauser,* Deputy Attorney General, with him, *Francis R. Filipi* and *Sally A. Lied,* Deputy

Attorneys General, and *LeRoy S. Zimmerman*, Attorney General, for respondent.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., July 9, 1984:

Trooper Swaydis appeals a Pennsylvania State Police Commissioner's order dismissing him following a Court-Martial Board's (Board) determination that he had engaged in improper conduct. We affirm.

This case is here on remand[1] from our Supreme Court for resolution of the following issues: (1) whether there was an improper commingling of prosecutorial and adjudicatory functions; and (2) whether the Board was without the power to render an adjudication on the criminal charges.

Swaydis had been charged with violations of both the Pennsylvania State Police Field Regulations and the Pennsylvania Crimes Code. The Commissioner sent a memorandum to the Governor requesting that court-martial proceedings be convened. The memorandum, dated November 26, 1980, contained allegations that Trooper Swaydis opened a checking account under a fictitious name and address, wrote checks knowing there were insufficient funds in said account, borrowed money from three individuals without repayment, withdrew $4,300 from his savings account knowing there were no legitimate funds in the account, established a residence under an alias, traveled out of his patrol zone without permission from his super-

---

[1] This Court, in *Swaydis v. Pennsylvania State Police*, 71 Pa. Commonwealth Ct. 382, 454 A.2d 1184 (1983), reinstated Swaydis and awarded him back pay from the date of his suspension. Our Supreme Court reversed, *Pennsylvania State Police v. Swaydis*, Pa. , 470 A.2d 107 (1983), holding that the Board was not precluded from determining that violations of regulations occurred even though criminal charges arising from the same misconduct had been dismissed.

visor, and conducted personal business on several occasions while in uniform and using an official vehicle.

On December 2, 1980, a district magistrate dismissed criminal charges against Swaydis, finding that the Commonwealth had failed to establish a prima facie case. On December 23, 1980, the Governor recommended that court-martial proceedings be convened. It is undisputed that, when the Governor issued his recommendation, he had not been notified that the criminal charges against Swaydis had been dismissed.

Swaydis first alleges his due process rights were violated during the court-martial proceedings because the prosecutorial and adjudicatory functions in two instances were commingled. Swaydis argues that (1) the Disciplinary Officer usurped the Commissioner's duties, and (2) the appointment of the State Police Chief Counsel as Trial Judge Advocate presented the potential for bias, prejudice, and conflict of interest.

Swaydis contends that the Disciplinary Officer had the de facto responsibility of making the final decision on whether State Police members should be court-martialed[2] and that his invasive role permeated the adjudicatory function[3] and scarred the entire proceedings. He asserts that the Disciplinary Officer improperly assumed the Commissioner's duty of ap-

___

[2] The Pennsylvania State Police Court-Martial Procedures Manual (Manual) provides that the Disciplinary Officer is responsible for evaluating the disciplinary action report initiated against a particular member of the State Police; then, "with concurrence of the Deputy Commissioner if deemed appropriate, directs that a member be Court-Martialed." Section II(A).

[3] A state administrative agency, in performing its statutorily-authorized dual function of complainant and adjudicator of the complaint, is not an unfair tribunal so long as these two functions are adequately separated. *State Dental Council and Examining Board v. Pollock*, 457 Pa. 264, 318 A.2d 910 (1974), overruled on other grounds, *Commonwealth v. Quinlan*, 488 Pa. 255, 412 A.2d 494 (1980).

pointing the Board members and relies on Section 711 of the Administrative Code of 1929,[4] which provides that no member of the State Police may be dismissed before the Commission provides proper notice of charges and a hearing "before a Court-Martial Board appointed by the Commissioner." Section I(B) of the Manual also provides, however, that the "Commissioner . . . shall establish a Court-Martial Board: and that an "enlisted member will be given an opportunity to be heard . . . before a Court-Martial Board appointed by the Commissioner." The record reveals that the Disciplinary Officer and the Director of the Bureau of Personnel submitted Board recommendations to the Commissioner who had to approve such choices. Nowhere in the Code or in the Manual does it provide that the Commissioner is bound by the Disciplinary Officer's choices.[5] The Commissioner is the ultimate designating authority.[6]

Swaydis also contends that the Disciplinary Officer should not have been selected as the coordinator who, as the Manual provides, insures that all required court-martial procedures were properly followed.[7]

---

[4] Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §251(b) (1).

[5] The State Police regulations were amended, after *Dussia v. Barger*, 466 Pa. 152, 351 A.2d 667 (1975), to provide for the Disciplinary Officer's role so as to remove the Commissioner from personally instituting court-martial proceedings. Therefore, the Commissioner's role in the prosecution of allegations of misconduct is reduced to an administrative one. *Berman v. Pennsylvania State Police*, 37 Pa. Commonwealth Ct. 559, 564, 391 A.2d 715, 718 (1978).

[6] Swaydis contends that the final candidates were not randomly selected but were well known to the Disciplinary Officer. The record indicates the relationship was strictly professional.

[7] The Commissioner convenes a Court-Martial Board and designates a procedures coordinator who prepares the Commission's letter requesting the Governor's approval for the court-martial recommendations, directs the accused's commanding officer to submit charges and specifications, ensures that appropriate transmittal cor-

Also, the Disciplinary Officer admitted that he had "some input" into a discovery decision to deny investigatory reports and into another decision whether to continue the hearing.[8] Our careful review of the record discloses that the Disciplinary Officer's prosecutorial function was adequately separated from his judicial function and therefore we can find no impermissible commingling of these functions.

We also reject Swaydis' contention that his right to due process was violated by the appointment of the State Police Chief Counsel as the Trial Judge Advocate. Swaydis argues it is constitutionally impermissible for a Trial Judge Advocate who performs prosecutorial functions to also act as Chief Counsel for the adjudicatory board and the Commissioner. This argument is similar to the one argued in *Pennsylvania Human Relations Commission v. Feeser*, 469 Pa. 173, 364 A.2d 1324 (1974), where the Supreme Court held there was no impropriety where the Commissioner's general counsel represented the complainants.[9] Here,

respondence is prepared for the Commissioner's signature and then distributed, and completes all arrangements for the court-martial proceedings. Section II(B) and (C).

[8] Swaydis also submits that the Disciplinary Officer was instrumental in suspending Swaydis without pay. The evidence indicates that the Deputy Commissioner and the Commanding Officer concurred with the Disciplinary Officer so as not to deny Swaydis due process.

Furthermore, Swaydis' contention that the Disciplinary Officer failed to correct the misleading memorandum to the Governor is without merit since there was no duty to inform the Governor of the dismissal of the criminal charges against Swaydis. *See Swaydis*, Pa. , 470 A.2d 107 (1983).

[9] In *Feeser*, the Commission's general counsel merely argued the merits of motions made by his opponent and asked that they be denied. Also, this Court has held that there was no due process violation where the attorney who prosecuted a case before a school board also served as the board's solicitor. *See In Re: Appeal of Feldman*, 38 Pa. Commonwealth Ct. 634, 395 A.2d 602 (1978).

the record indicates that the Trial Judge Advocate acted in a purely adversary capacity and did not conduct the hearing, make legal rulings, or advise the Board during the course of the proceeding.[10] The Board issued its own rulings following the attorneys' arguments. Moreover, the Board's legal advisor was a Deputy Attorney General.

We hold, therefore, that Swaydis' proffered allegations of improper commingling are not supported by the record evidence. The alleged commingling of functions did not affect the fact-finding role of the adjudicator. Swaydis does not contest the validity of the misconduct charges. His claim rests on a denial of due process. His inability to produce any evidence of actual bias is fatal to that claim. *See Bryan v. Pennsylvania Human Relations Commission*, 45 Pa. Commonwealth Ct. 125, 134, 404 A.2d 1368, 1372 (1979). The allegations do not raise such a risk of prejudice as to taint the decision issued after the adversarial hearing. *Fumo v. Insurance Department*, 58 Pa. Commonwealth Ct. 392, 395, 427 A.2d 1259, 1262 (1981).

Finally, we reject Swaydis' contention that the subsequent administrative agency court-martial proceeding was barred by the result of the previous criminal prosecution found on the same facts.[11] "Resolution of criminal charges in favor of a criminal defend-

---

[10] Swaydis' contentions that the Trial Judge Advocate "participated in making pre-trial adjudicatory-like decisions communicated with the Commissioner during the hearing process, and was given an elevated status during the hearing process" are not supported by the evidence. The fact that the Trial Judge Advocate, as an adversary, gave his personal opinion as to Swaydis' guilt and to the credibility of witnesses is not enough to support a due process violation in this administrative proceeding.

[11] The administrative action is civil, not criminal, in nature. *V.J.R. Bar Corp. v. Pennsylvania Liquor Control Board*, 480 Pa. 322, 326, 390 A.2d 163, 165.

ant does not bar subsequent civil or administrative proceedings concerning the same underlying misconduct." *Swaydis,* Pa. at , 470 A.2d at 107-08, citing *V.J.R. Bar Corp. v. Pennsylvania Liquor Control Board,* 480 Pa. 322, 326, 390 A.2d 163, 164-65 (1978).

Affirmed.

### ORDER

The order of the Pennsylvania State Police Commissioner dated March 4, 1981, is hereby affirmed.