634 A.2d 730

**PENNSYLVANIA STATE POLICE, Petitioner,**

v.

**PENNSYLVANIA STATE TROOPERS' ASSOCIATION, Respondent.**

**PENNSYLVANIA STATE TROOPERS' ASSOCIATION and Ervin P. Ward, Petitioners,**

v.

**PENNSYLVANIA STATE POLICE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1993.

Decided Nov. 23, 1993.

Joseph S. Rengert, Chief Counsel, for petitioner/respondent, Pennsylvania State Police.

James L. McAneny for respondent/petitioners, Pennsylvania State Troopers' Ass'n et al.

Before PALLADINO and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

The Pennsylvania State Police (State Police) and the Pennsylvania State Troopers Association (Union) cross-appeal from an arbitration award sustaining in part the grievance of Trooper Ervin P. Ward and reducing his discharge for the failure to report information of illegal activity and unbecoming conduct to a suspension.

On August 21, 1991, the State Police battered down the door of the home of Trooper Ervin Ward and his family. Based on evidence that drug buys had been made at the residence, the house was searched. The State Police found 8.7 grams of cocaine and $350 in a spare bedroom and marijuana and drug paraphernalia in the master bedroom and in a purse. Both Trooper Ward and his wife were arrested. Trooper Ward was indicted for possession and possession of cocaine with the intent to deliver and later found not guilty.

In the meantime, Trooper Ward was suspended without pay and then discharged for failing to report his wife's drug use in violation of the Field Regulation (FR) Reporting of Information [1] and Unbecoming Conduct,[2] for failing to seize and secure the drugs he discovered in violation of the FR Protection of Evidence, and for knowingly possessing cocaine, possessing marijuana and drug paraphernalia in violation of the FR Conformance to Laws.[3] Trooper Ward chose to grieve the disciplinary action. The arbitrator was presented with the issue of "whether or not just cause existed for the Grievant's suspension and subsequent discharge."

Trooper Ward testified to the arbitrator that in November, 1990, he accidentally discovered what he suspected to be cocaine in his wife's purse. He confronted her and she promised not to use drugs again. He destroyed the drugs that he had found. Over the following months, he found evidence that his wife was continuing to use drugs and he destroyed the evidence he found and again confronted his wife. He also noticed that substantial withdrawals had been made from their bank account. In June, 1991, while on vacation, he found his wife using drugs and confronted her. He again destroyed the drugs. His wife promised to seek counseling.

Based on Trooper Ward's testimony and the other evidence, the arbitrator made the following findings: (1) from the incident in November, 1990, to July 9, 1991, when she sought counseling, Trooper Ward knew that his wife was using drugs;

1. Reporting of Information, Field Regulation 1.17, states:
 Members shall report to their supervisor all information that comes to their attention concerning organized crime, racketeering, vice conditions or violations of any laws concerning such activities.

2. Field Regulation 1.02 defines "Unbecoming Conduct" as:
 That type of conduct with could reasonably be expected to destroy public respect for Pennsylvania State Police officers and/or confidence in the Department. Members shall not conduct themselves in a manner which is unbecoming to a police officer.

3. The Protection of Evidence Field Regulation provides:
 Members shall not, under any circumstances, manufacture, destroy, improperly remove from an incident scene or convert to their own use, any evidence or other material found or recovered in connection with the investigation of an incident.

(2) he did not report his wife's drug use to his supervisor; and, (3) he did not seize or properly secure the drugs, but rather destroyed them. The arbitrator considered Trooper Ward's testimony that he secured a promise from his wife not to use drugs again and that he had no knowledge that his wife was allegedly dealing drugs as well.

Based on these findings, he held that Trooper Ward's failure to report and seize the drugs as required was excusable in the first months because he was attempting to protect his family relationship. But at the point when he placed his wife in counseling, just cause for discipline existed because Trooper Ward was obligated to report his wife's drug use to his supervisor because it jeopardized his effectiveness as a police officer. The arbitrator also held that Trooper Ward's acquittal of the criminal charges made the administrative charge of violating the Field Regulation for Conformance to Laws moot.

As to penalty, the arbitrator stated that although Trooper Ward was in violation of the Field Regulations by not reporting his wife's drug use, based on his ten-year discipline-free record, discharge was too severe. He reduced the discipline to suspension without pay, equal to the time Trooper Ward had been suspended, and ordered that he be returned to work. Both parties then filed appeals to the arbitrator's award.

The first issue presented by the parties is the proper standard of review this court should apply. Previously, our case law has applied the "narrow certiorari" standard of review to appeals of Act 111 [4] grievance arbitration. *See City of Philadelphia v. FOP Lodge No. 5 (Wilson)*, 129 Pa.Commonwealth Ct. 392, 565 A.2d 1232 (1989). However, we have recently decided that the proper standard of review is the one provided for in the Uniform Arbitration Act (UAA), 42 Pa.C.S. § 7302(d), or the "essence test". *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Trooper James Betancourt)*, 159 Pa.Commonwealth Ct. 489, 633 A.2d 1278 (1993).[5]

4. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

5. The standard set forth in the UAA provides:

The "essence test", as it has been formulated in our case law, requires a determination as to whether the terms of the agreement encompass the subject matter of the dispute, and, if so, the validity of the arbitrator's interpretation is not a matter of concern to the court. *Leechburg Area School District v. Dale*, 492 Pa. 515, 424 A.2d 1309 (1981); *Joint Bargaining Committee of the Pennsylvania Social Services Union v. Commonwealth*, 81 Pa.Commonwealth Ct. 126, 472 A.2d 1194 (1984). Therefore, on judicial review, an arbitration award should be upheld if the award "draws its essence from the collective bargaining agreement." *Leechburg*, 492 Pa. at 520, 424 A.2d at 1312.

■ The Union and Trooper Ward contend that the imposition of the suspension for failing to report his wife's drug use to his supervisor at the time when she began treatment violated his constitutional right to familial privacy. The United States Constitution does provide some protection of an individual's privacy, including an interest in avoiding disclosure of personal family matters. *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105 (3d Cir.1987).[6] However, the privacy interest is not absolute and disclosure may be required when there is a compelling state interest. *Stenger v. Lehigh Valley Hospital Center*, 530 Pa. 426, 609 A.2d 796, 802 (1992).

■ Trooper Ward's constitutional right to familial privacy was not violated by the arbitrator's imposition of a suspension

Where this paragraph is applicable, a court, in reviewing an arbitration award pursuant to this subchapter, shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury, the court would have entered a different judgment or a judgment notwithstanding the verdict.

42 Pa.C.S. § 7302(d)(2). Even after the enactment of the UAA, with its "n.o.v." standard, the case law has continued to apply the essence test, viewing the two standards as essentially the same. *FOP Lodge No. 5 (Wilson)*, 129 Pa.Commonwealth Ct. at 396, 565 A.2d at 1235.

6. *FOP Lodge No. 5*, remanded without opinion, 838 F.2d 459 and 838 F.2d 460 (3d Cir.1987), on remand, 1988 WL 6134, 1988 US Dist LEXIS 1170 (E.D.Pa. Jan. 25, 1988), vacated on other grounds, 859 F.2d 276 (3d Cir.1988).

for failing to report his wife's drug use to his superior.[7] A police officer is sworn to enforce the criminal laws without exception and has agreed to abide by the Field Regulations in the performance of his duty. Because of the overwhelming importance of enforcing criminal laws, not to mention the adverse public perception that there is one standard of enforcement for police officers' families and another for everyone else, a police officer has no right to familial privacy that excuses a failure to abide by the Field Regulations and not report criminal activity. The police officer must comply with the Field Regulations by reporting on-going criminal activity or be discharged for failing to carry out his sworn duty. Even though members of the general public are not required to report criminal activity by a family member, society has the right to hold police officers to a higher standard of conduct than other citizens. *Fabio v. Civil Service Commission of the City of Philadelphia*, 489 Pa. 309, 414 A.2d 82 (1980).[8]

■ The State Police contend that the arbitrator's reduction of the discipline from discharge to suspension was not rationally derived from the agreement between the parties. The collective bargaining agreement between the State Police and the Union states in Article XXVIII:

> The arbitrator shall confine himself/herself to the precise issue submitted for arbitration and shall have no authority to determine any other issues not submitted to him/her.

The arbitrator was presented the question of whether or not just cause existed for the suspension and subsequent dis-

---

7. The disclosure of the information to a superior is not equivalent to testifying against a spouse and, therefore, the spousal privilege does not apply. 42 Pa.C.S. §§ 5914, 5923, 5924; *Commonwealth v. Dubin*, 399 Pa.Superior Ct. 100, 581 A.2d 944 (1990), *petition for allowance of appeal denied*, 527 Pa. 592, 588 A.2d 912 (1991) (prohibition against using a spouse's confidential communications at trial does not apply to actions of police in obtaining information).

8. Additionally, because the requirement to reveal the criminal activity does not violate the constitutional right to familial privacy, the arbitrator's determination that Trooper Ward's failure to notify his superior after the first and second incident with his wife was excused is not rationally derived from the agreement between the State Police and the Union.

charge. Once he found that the trooper knew about his wife's drug activity but failed to comply with the regulations, the arbitrator's inquiry should have ended. Because Article XXVIII limits the arbitrator to the issue presented and he was not presented the further question of what was the appropriate penalty, his reduction of the penalty was not rationally derived from the agreement.

Moreover, in *Pennsylvania State Police v. The Fraternal Order of Police (DiRaimo)*, 159 Pa.Commonwealth Ct. 628, 634 A.2d 270 (1993) (J. Pellegrini dissenting), where the arbitrator found that the grievant had committed the acts charged by the State Police but imposed a suspension rather than a discharge, this court held that once it is established that there was just cause for the action taken by the state police, the action must be accepted unless the agreement between the parties provides authority for the arbitrator to modify a penalty. We stated that "the power of the State Police to discharge any employee who is proven to have engaged in unbecoming conduct ... is one presumptively retained by the State Police in the absence of any provision in the Agreement to the contrary." *DiRaimo*, at ——, 634 A.2d at 274. Because the arbitrator was not given the authority to determine the appropriate penalty, we reverse that part of the arbitrator's award reducing the penalty from a discharge to a suspension.[9]

We affirm the arbitrator's award on the appeal of the Union and Trooper Ward because his constitutional right to familial privacy was not violated by the requirement to report criminal activity. However, on the appeal of the State Police, we reverse and reinstate the discharge imposed by the State Police.

9. The State Police also contend the arbitrator erred in concluding that because Trooper Ward was acquitted of the criminal charges, he would not consider the administrative disciplinary charge of violating the Conformance to Law Field Regulation for the same underlying conduct. We need not reach that issue. *But see Commonwealth, Pennsylvania State Police v. Swaydis*, 504 Pa. 19, 470 A.2d 107, 108–09 (1983); *City of Philadelphia v. Fraternal Order of Police (Mazzo)*, 105 Pa.Commonwealth Ct. 639, 525 A.2d 460 (1987), *petition for allowance of appeal denied*, 519 Pa. 669, 548 A.2d 258 (1988).

140 

## *ORDER*

AND NOW, this 23rd day of November, 1993, the award by Arbitrator Carl F. Stoltenberg entered on February 26, 1993, is affirmed as to appeal No. 676 C.D.1993 and is reversed as to appeal No. 632 C.D.1993, and the discharge imposed by the State Police is reinstated.